RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUN 2 1 2013

# No. 12-56464

FILED _____
DOCKETED _____
DATE   INITIAL

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| **B. Benedict Waters,**<br>Plaintiff-Appellant,<br><br>vs.<br><br>**Juan Carlos Casas,**<br>a natural person;<br><br>**Rita L. Robinson,**<br>a natural person;<br><br>**Rickenbacker Group,**<br>**Incorporated,** a California<br>corporation;<br><br>**Experian Information Solutions,**<br>**Incorporated,** an Ohio corporation;<br><br>**Hollywood Tow Service,**<br>**Incorporated,** a California corporation;<br><br>**City of Los Angeles,** a<br>California municipal corporation;<br><br>Defendants - Appellees. | Appeal from the United States<br>District Court for the Central District<br>of California, Western Division<br><br>**No. 02:09 - CV - 07696 CAS (AJWx)**<br><br><br><br><br><br>*ORIGINAL* |

## Reply Brief


B. Benedict Waters

**Plaintiff - Appellant,** *pro se*

6230 Wilshire Blvd., #182 ● Los Angeles, California 90048 ● 310-967-3943

# Table of Contents

Objections / Requests To Strike  . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Prologue:  Anti-Semitic – or Anti-Black?  . . . . . . . . . . . . . . . . . . . . . .  2

## CHAPTER I
### Rita Robinson

Part 1.  REPLY INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . .  3

Part 2.  JURISDICTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Part 3.  BACKSTORY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Part 4.  STANDARD OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . .  3

Part 5.  SUMMARY OF REPLY ARGUMENT  . . . . . . . . . . . . . . . . .  4

Part 6.  DISCUSSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4 - 7

SECTION A.  SCHIZOPHRENIA?  OR DENYING SERVICE
WHILE ALSO ADMITTING SERVICE
JUST A SLOPPY LIE?  . . . . . . . . . . . . . . . . . . . . .  5 - 6

Subsection (*i*)  Presumption of Service Not
Overcome By Alibi  . . . . . . . . . . . . . . . . . .  6

Subsection (*ii*)  Claim of Meritorious Defense
A Sham  . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Subsection (*iii*)  Tossing Out Default **Was**
Prejudicial Waste of Time  . . . . . . . . . . . . .  7

Part 7.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

# CHAPTER II

## Hollywood Tow

Part 1.        REPLY INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . .  9

Part 2.        JURISDICTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Part 3.        REPLY:  ISSUES PRESENTED  . . . . . . . . . . . . . . . . . . . . .  10

Part 4.        REPLY STATEMENT OF THE CASE  . . . . . . . . . . .  10 - 11

SECTION A.        REPLY STATEMENT OF FACTS  . . . . . . . . . . . .  10

SECTION B.        BACKSTORY  . . . . . . . . . . . . . . . . . . . . . . . . .  10 - 11

Part 5.        REPLY STANDARD OF REVIEW  . . . . . . . . . . . . . . . . .  12

Part 6.        SUMMARY OF REPLY ARGUMENT  . . . . . . . . . . . . . .  12

Part 7.        DISCUSSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13 - 20

SECTION A.        HOLLYWOOD TOW RULING **VIOLATED**
CIRCUIT **LAW** WHEN MOTIONS GRANTED
"*THEREFORE*" PLAINTIFF'S CROSS-MOTION
DENIED  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13 - 14

Subsection (*i*) - "*Therefore*" Means "*For That Reason*"  .  13 - 14

SECTION B.    ONLY PLAINTIFF'S "OPPOSITION"
WAS CONSIDERED  . . . . . . . . . . . . . . . . . . . . . .  14

SECTION C.    NONE SO BLIND AS ONE WHO WILL NOT SEE:
SMOKING GUN EVIDENCE OF CONSPIRACY  .  15

SECTION D.    REPORTER'S TRANSCRIPT COST
AWARDED TO JUAN CASAS, RICKEN-
BACKER GROUP, INC. AND HOLLYWOOD
TOW–BUT NO SUCH TRANSCRIPT  . . . . . .  15 - 16
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

SECTION E.    ABSOLUTELY NO NOTICE OR OPPOR-
TUNITY TO BE HEARD PRIOR TO
PRE-FILING INJUNCTION; WHICH
CAME OUT OF THE BLUE  . . . . . . . . . . . . .  17 - 18

SECTION F.    UNSUPPORTED ATTACKS ON PLAINTIFF  . . . .  18

SECTION G.    DEFENDANT SAYS 2012 JULY 09 ORDER
ARISES FROM VEXATIOUS CONDUCT.
FALSE.  ABSENT TIME TRAVEL— REMAND
TO ANOTHER JUDGE  . . . . . . . . . . . . . . . . .  18 - 21

Part 8.    CONCLUSION    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

## CHAPTER III

### Experian Information Solutions, Inc. & Nathaniel Peardon Garrett

Part 1.    REPLY INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . .  22

Part 2.    JURISDICTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Part 3.    BACKSTORY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Part 4.        PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . .  23

Part 5.        REPLY RE STANDARD OF REVIEW  . . . . . . . . . . .  24 - 25

Part 6.        SUMMARY OF REPLY ARGUMENT  . . . . . . . . . . .  24 - 25

Part 7.        REPLY DISCUSSION  . . . . . . . . . . . . . . . . . . . . . . .  25 - 40


SECTION A        MR. **GARRETT  PROMISED** THIS COURT THREE
                 "*TOWS*" AND THREE "*TOWING DISPUTES*"
                 WERE "*ACTUALLY LITIGATED*" IN THIS CASE;
                 **A PROMISE BROKEN**  . . . . . . . . . . . . . . . .  25 - 26


SECTION B.       LIKE THE WIZARD OF OZ – GARRETT IS ALL
                 SMOKE AND MIRRORS:  <u>NOT</u> <u>ONCE</u> SHOWING
                 WE EVER LITIGATED THE LEGAL VALIDITY
                 OF ANYTHING  . . . . . . . . . . . . . . . . . . . . . . .  26 - 28


SECTION C.       ASSERTIONS —

                 •        Three Collection Accounts
                 •        Deposition Testimony
                 •        Letter to Rickenbacker

                 — ARE A  FRAUD  ON THE COURT . . . . . . . .  29 - 35


        Subsection (*i*)   Three Collection Accounts and
                           Little Green Men  . . . . . . . . . . . . . . . . . . . . .  29 - 30


        Subsection (*ii*)  Experian's Assertion Of Plaintiff's Deposition
                           ***Opinions*** And Assertion Of Plaintiff's Letter
                           ***To*** Rickenbacker Approaches Fraud
                           On The Court  . . . . . . . . . . . . . . . . . . . . . .  30 - 33


        Subsection (*iii*) Deposition Renditions Are Twisted
                           And Distorted  . . . . . . . . . . . . . . . . . . . . . .  34 - 35

SECTION D.    DISSEMBLING CREDIT INFORMATION AS
              ACCURATE IS HIGH SCHOOL DEBATE 101   36 - 38

SECTION E.    SAYING CROSS-MOTION WAS CONSIDERED
              RAPES THE PRIME DIRECTIVE OF
              COMMUNICATIONS: "*USE LANGUAGE
              ACCURATELY AND HONESTLY, STATING
              ONLY THE TRUTH*" . . . . . . . . . . . . . . . . . . . . . . . . 39

SECTION F.    NO NOTICE, OPPORTUNITY OR REASON
              RE PRE-FILING INJUNCTION IN VIOLATION
              OF FRCP 65  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

Part 8.    CONCLUSION:
           ANY LIE REPEATED OFTEN ENOUGH  . . . . . . . . . . . .  41

EPILOGUE:  SOMETIMES
           "*THE UNIVERSE BENDS TOWARDS JUSTICE*"  . . . .  42

# Table of Authorities

## <u>Cases</u>

**\* Apache Survival Coalition v. United States** *(9th Cir. 1994)*
  *21 F.3d 895, 910, 911* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29-30

**Big Bear Lodging Association v. Snow Summit Inc.** *(9th Cir. 1999)*
  *182 F.3d 1096, 1105* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Brow v. Farrelly** *(3rd Cir. 1993)*
  *994 F.2d 1027, 1038* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Cahlin v. Gen Motors Acceptance Corp.** *(11th Cir. 1991)*
  *936 F.2d 1151, 1160* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**\* Carvalho v. Equifax Info. Servs. LLC** *(9th Cir. 2010)*
  *629 F.3d 876, 891* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 36, 37

*Casella v. Equifax Credit Info. Servs.* (2nd Cir. 1995)
  *56 F.3d 469, 474* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**Castro v. United States** (1st Cir. 1985)
  *775 F.2d 399, 410* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Daly-Murphy v. Winston** (9th Cir. 1987)
  *837 F.2d 348, 351* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Denofre v. Transportation Insurance Rating Bureau** *(7th Cir. 1977)*
  *560 F.2d 859, 861* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Evanston Ins. Co. v. OEA, Inc.** (9th Cir. 2009)
  *566 F.3d 915, 921* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**\* Fair Housing Council fo Riverside County, Inc. v. Riverside Two**
  *(9th Cir. 2001) 249 F.3d 1132, 1136* . . . . . . . . . . . . . . . . . . . . . 14, 24

**Falk v. Allen** (9th Cir. 1984)
  739 F.2d 461,463 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Filarsky v. Superior Court* (2002)
   28 Cal.4th 419, 426     . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Greene v. Lindsey* (1982)
   456 U.S. 444, 455     . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**\* Gorman v. Wolpoff & Abramson, LLP** (9th Cir. 2009)
   584 F.3d 1147, 1163-1165 . . . . . . . . . . . . . . . . . . . . . . . . 27, 36, 37

**\* Guimond v. Trans Union Credit Information Co.** (9th Cir.1995)
   45 F.3d 1329, 1333     . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*Hagestad v Tragesser* (9th Cir. 1995)
   49 F.3d 1430, 1434-35     . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Hampshire v. Maine* (2001)
   532 U.S. 742, 749     . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**Hess v. Ford Motor Co. (2002)**
   **27 Cal.4th 516, 533**     . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**\* \* Herisko v. Bank of America** (9th Cir. 2010)
   367 Fed. App'x 793, 794  . . . . . . . . . . . . . . . . . . . . . . . 28, 32, 33

**In re Hartford Textile Corp.** (2d Cir. 1979)
   613 F.2d 388, 390     . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**In re Oliver** (3d Cir. 1982)
   682 F.2d 444, 445-446     . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**In re Powell** (D.C. Cir. 1988)
   851 F.2d 427, 431     . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Kettler v. CSC Credit Service, Inc.**, 2003 U.S. Dist. LEXIS 14424,
   2003 WL 21975919, \*2 (D. Minn. 2003)  . . . . . . . . . . . . . . . . . . 32

**\* Kingvision Pay-Per-View, Ltd v. Lake Alice Bar** (9th Cir. 1999)
   168 F.3d 347, 351-52     . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Knapp v. Northwestern Univ.** (7th Cir. 1996)
   101 F.3d 473, 478     . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Lee v. Security Check, L.L.C.,**
  2010 U.S. Dist LEXIS 82630, ** 30, 31 . . . . . . . . . . . . . . . . . . . . .  26

**Lowry v. Barnhart** (9th Cir. 2003)
  329 F.3d 1019, 1028       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**Link v. Wabash Railroad** (1962)
  370 U.S. 626, 633       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

**McDonald v. Mabee** (1917)
  243 U.S. 90, 92       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**Miranda B. v. Kitzhaber** (9th Cir. 2003)
  328 F. 3d 1181, 1185       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

**Mullane v. Central Hanover Bank & Trust Co.** (1950)
  339 U.S. 306, 314       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**Nielson v. U.S. Bank** (D. Minn. Jan 26, 2005)
  2005 WL 189709       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

**Pavilonis v. King** (1st Cir. 1980)
  626 F.2d 1075, 1079       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

**Pearson v. Callahan** (2009)
  555 U.S. 223, 239       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

**\*** **Petty v. Equifax Info. Servs., LLC**, 2010 U.S. Dist. LEXIS 113159,
  2010 WL 4183542, at **9-10 (D. Md. Oct. 25, 2010)  . . . . . . . . . .  31

**Procup v. Strickland** (11th Cir. 1986)
  792 F.2d 1069, 1074       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

**The Copley Press, Inc. v. Superior Court** (2006)
  39 Cal.4th 1272, 1282       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

**Trigueros v. Adams** (9th Cir. 2011)
  658 F.3d 983, 988       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

**United States v. City of Twin Falls, Idaho** (9th Cir.1986)
  806 F.2d 862, 868       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

***Video Software Dealers Ass'n v. Schwarzenegger*** *(9th Cir. 2009)*
    *556 F.3d 950, 956* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

***Wickstrom v. Experian***, *2010 U.S. Dist. LEXIS 65477,*
    *2010 WL 2651303, \*5 (W.D. Mich. 2010)* . . . . . . . . . . . . . . . . . . . .  32

***Yolder v. Credit Bureau of Montgomery, L.L.C.*** *(M. D. Ala. 2001)*
    *131 F.Supp.2d 1275, 1289* . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

***Zopatti v. Rancho Dorado Homeowners Ass'n***,
    *No.01CV1091 DMS (WVG),*
    *2012 U.S. Dist. LEXIS 3464, at \*12  (S.D. Cal. Jan. 10, 2012)* . .  25

## \* *PRECEDENTS PRIMARILY  RELIED  ON*

## \* \* *PERSUASIVE AUTHORITY PRIMARILY RELIED ON*

### Federal Statutes

15 U.S.C. § 1681a(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30
15 U.S.C. § 1681i . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30
15 U.S.C. § 1681i(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . .  30, 37
15 U.S.C. § 1681s-2b(E)(*ii*) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
15 U.S.C. § 1681s-2b(E)(*iii*) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

### Federal Rules of Appellate Procedure

Rule 32.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

## **Federal Rules of Civil Procedure**

Rule 4(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rule 8(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rule 11(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rule 15(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Rule 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Rule 65(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Rule 65(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## **Circuit Rules**

Rule 28(a)(9)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rule 28-2.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

## **California State Statutes**

Civil Code § 1785.25(a) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

Code of Civil Procedure, § 415.20(b) . . . . . . . . . . . . . . . . . . . . . . 4

❖    Evidence Code, § 647 . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Vehicle Code, Section 3068.1 . . . . . . . . . . . . . . . . . . . . . . 38, 39

## **Other Authority**

Brian J. Paul, *A Word About the Last Word in Briefing*, <u>Certworthy</u> 1, 5-6 (Winter 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

❖     **Black's Law Dictionary** (9th ed. 2009) 1616, Def. 1  . . . . . . . . . .  13

Paul J. Killion, *Having the Last Word: The Appellate Reply Brief*, <u>Certworthy</u> 8 - 10 (Fall 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

❖     **Macmillan Dictionary**, Macmillan Publishers Limited 2009–2013, http://www.macmillandictionary.com/dictionary/british/-therefore (2013-03- 24)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

❖     **Webster's Third New International Dictionary**, unabridged, (1986) 2372, Def. 1  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

❖     *OTHER  AUTHORITY  PRIMARILY  RELIED  ON*

# Objections / Requests To Strike

We pass the **many** unsupported attacks in the answering briefs (**not** the recommended course, see Brian J. Paul, *A Word About the Last Word in Briefing*, Certworthy 1, 5-6 (Winter 2003), see Paul J. Killion, *Having the Last Word: The Appellate Reply Brief*, Certworthy 8 - 10 (Fall 1998)), due to the word-limitation ceiling.

Plaintiff objects to consideration of and requests stricken any unsupported assertion, Circuit Rule 28-2.8, ***Big Bear Lodging Association v. Snow Summit Inc. (9th Cir. 1999) 182 F.3d 1096, 1105***, and objects to consideration of and requests stricken any assertion that references a matter or document <u>outside</u> the records of <u>this</u> case.  ***Lowry v. Barnhart*** *(9th Cir. 2003) 329 F.3d 1019, 1024;* ***Daly-Murphy v. Winston*** *(9th Cir. 1987) 837 F.2d 348, 351.*

See, <u>Appellate Commissioner Order</u>, DktEntry 61, filed 2013 April 25.

## Prologue:  Anti-Semitic – or Anti-Black?

As a way of normalizing the startling number of exaggerations, falsehoods and impressive lack of respect for circuit rules, we stated our experiences with Jewish lawyers; a demonstrated propensity greater than others for misrepresentation, prevarication and a disdain for limitations imposed by rules and society. Anti-Semitic?  Hardly.

Are the defendants' Jewish lawyers and the Jewish district judge anti-black? Absolutely.  Using a means–propaganda–urged by another group of racists: Nazis.

For example, Garrett **repeatedly** misrepresents to this Court that the black Plaintiff is challenging the "***legal validity***" of tows by Hollywood Tow.  True? Plaintiff was asked that very question at his deposition.

> "So as I understand it, you are disputing
> the accuracy of the Rickenbacker accounts for
> several reasons; correct?
>
> A    Yes.
>
> Q    <u>One of those reasons is that you believe</u>
> <u>that Hollywood Tow illegally seized those</u>
> <u>vehicles; correct?</u>
>
> A    <u>No</u>."

<u>Experian ER</u> 153:3-14.

# CHAPTER I
## Rita Robinson

**Part 1**.            **REPLY INTRODUCTION**

Plaintiff's sues re California Public Records Act ("PRA"); requesting an

Impound Log copy.  <u>Supplemental Excerpts of Record: Tab 12, pp. 67 - 69</u> (**Supp**

**ER:T12**).

**Part 2**.            **JURISDICTION**

Undisputed.

**Part 3**.            **BACKSTORY**

Los Angeles City and Hollywood Tow Service - for their quotas - lifted

Plaintiff's parked car, shooting themselves in the foot by taking a photograph

("**Photograph**") at the time; revealing the car *lawfully parked*.  Sequentially, the

**Photograph** was suppressed at an administrative hearing, a court order to transfer

the **Photograph** for *de novo* trial was disobeyed, then Plaintiff's PRA request for

a copy of the **Photograph** ignored.  *Waters v. Hollywood Tow*, *02:07-07568*

*CAS*, the **2007 Case**, sues to enforce the request.

This **2009 Case** sues to compel disclosure by Defendant Rita Robinson,

General Manager, City of Los Angeles, of the <u>later-discovered</u> Impound Log.

**Part 4**.            **STANDARD OF REVIEW**

Concur.

**Part 5**.                    **SUMMARY OF REPLY ARGUMENT**

The one-sentence ruling quashing Robinson's default is too skeletal for appellate review.  Defendant's schizophrenic denial fails to overcome the *presumption* of service.  Her claim of a "*defense*" for "*damages*" under the PRA is a chimera because she is <u>not</u> sued for damages under the PRA.

**Part 6**.                    **DISCUSSION**

Robinson implies that unless she *confesses* knowing she was served her pretended ignorance trumps the registered process server's return.  She is wrong.

Due process requires notice; notice *reasonably likely*, under the circumstances, to inform of the action.  **Mullane v. Central Hanover Bank & Trust Co. (1950) 339 U.S. 306, 314.**  A method "*reasonably likely*" to result in notice is sufficient.  **Greene v. Lindsey (1982) 456 U.S. 444, 455.**  If such method is followed, due process is satisfied even if it does <u>not</u> result in the defendant receiving *actual* notice.  **McDonald v. Mabee (1917) 243 U.S. 90, 92.**

The federal rules authorize service of summons pursuant to state law, importing de facto forum state law.  <u>Fed. R. Civ. Proc. 4(e)(1)</u>.  Under California law, <u>Code of Civil Procedure § 415.20(b)</u>, substitute service is a method of service "*reasonably likely*" to result in the defendant receiving actual notice.

SECTION A.       **SCHIZOPHRENIA?  OR DENYING SERVICE <u>WHILE</u> ALSO ADMITTING SERVICE JUST A SLOPPY LIE?**

A registered process server, Al Edwards, served process <u>at Robinson's place of business</u> then mailed a copy to Robinson <u>at Robinson's place of business</u>, **DN 280, pp. 5-6**, re the **2007 Case**.

<u>At the same time</u>, Mr. Edwards served the process re this case, the **2009 Case**, <u>at Robinson's place of business</u>.  The **2007 Case** and this **2009 Case** were <u>delivered together</u>, <u>at the same time</u>, <u>at Robinson's place of business</u> then mailed.

In moving to toss her default, **<u>Robinson's lawyer prepared</u>** and **<u>Robinson signed a declaration</u>** at war with natural law.

Robinson swore on *personal knowledge* [1]the **2007 Case** had been served on her, [2] but denied on *"personal knowledge"* [3] the registered process server had *ever* been at her place of business and so did not served the **2009 Case**.  Schizophrenia?

Without waiting for our answer, which she rarely reads anyway, Snyder, j., swiftly threw out Robinson's default in a one-sentence ruling.  *See* <u>Opening Brief</u> at 8.

---

[1] *"**To my knowledge**, <u>all of the facts</u> . . . are true and correct."* **Robinson ER 8:6-7**.  Emphasis added.

[2] *"For instance, **<u>I was served</u>** [with] the summons in* [the **2007 Case**]." **Robinson ER 8:27-28** Emphasis added.

[3] *Id.*

SECTION B.        **DEFENDANT FAILED ALL THREE FALK FACTORS**

Robinson concedes default may only be set aside upon a finding of good cause determined by a "*tripartite factorial test*".  **Robinson AB 10** citing ***Falk* v. *Allen*** *(9th Cir. 1984) 739 F.2d 461,463.*

### Subsection *(i)*    Presumption Of Service Not Overcome By Alibi

California Evidence Code, § 647, codifies a *presumption* that facts in the return of a registered process server are true; the service of process valid. [4] Simply denying service does not overcome this presumption.  And, Robinson's denial does not overcome the laws of nature.

### Subsection *(ii)*    Claim Of Meritorious Defense A Sham

Robinson asserts, sans reference to the record, that "*she possessed meritorious defenses to Plaintiff's claims*" **Robinson AB 4, ¶ 2**, and at **6**.

Her defense ( ? ):  "*Under California Public Records Act, only public agencies – and not individuals like Ms. Robinson – have any liability*."  **Robinson AB 6, ¶ 3**.  Her "*meritorious defense*" which has surface appeal – she is correct that an individual has no "*liability*" under the PRA  –  is a sham.  The Eleventh Claim does not seek liability.  **Supp ER:T12**.  The Prayer requests only equitable relief.  **Supp ER:T13**.

---

[4] "*The return of a process server . . . establishes a presumption, affecting the burden of producing evidence, of the facts stated in the return.*"

***Subsection (iii)*** **Tossing Out Default Was Prejudicial Waste of Time**

"*As to the third* [Falk] *factor, which considers the prejudicial effect of setting aside an entry of default, Appellant was not, and could not be, prejudiced.*" **Robinson AB 8, ¶ 1**.  Plaintiff <u>was</u> prejudiced.

*First*, Robinson's assertion is an undeveloped <u>conclusion</u> sans reference to support in the record; it should be passed without consideration. ***Pearson v. Callahan** (2009) 555 U.S. 223, 239*.

*Second*, the **requirement** that the defaulting party possess a meritorious defense establishes that otherwise when the defendant lacks a viable defense tossing out a valid default would expose the plaintiff to **<u>needless</u>** litigation; in other words = *prejudice*.

*Third*, resolving a PRA dispute is straightforward.  See ***Filarsky v. Superior Court** (2002) 28 Cal.4th 419, 426*.  One sues for declaratory relief.  An order issues to show cause why the relief should not be granted with the strong **presumption, The Copley Press, Inc. v. Superior Court** (2006) 39 Cal.4th 1272, 1282, the relief should be granted.  If the response fails to overcome the presumption disclosure is ordered. ***Filarsky,*** *supra*.  This is all done as ***priority***. In throwing out Robinson's default, judicial comity, **economy** and common sense required an order to show cause why a copy of the Impound Log not be disclosed.

**Part 7**.                    **CONCLUSION**

*Without* referencing the record, Gabriel Dermer–Robinson's lawyer–asserts that Snyder, j., applied the **Falk** factors, finding "*good cause*" to vacate default. The record shows **only** a <u>**one-sentence**</u> ruling, <u>**not**</u> amenable to review, requiring remand. **Hagestad v Tragesser** *(9th Cir. 1995) 49 F.3d 1430, 1434-35.*  Even overlooking Snyder, j's abdication of trial court duties, a *nisi prius* review yields no **Falk** elements favoring Defendant.

What presents in this instance is Los Angeles' management wanting to suppress a *very* public record—a record embarrassing because it helps show yet <u>another</u> car lawfully parked still curiously snatched off city streets by a city-contracted towing company.  So, using their power to spend, they waste  public money here rather than simply provide a **10¢** copy of the Impound Log; **a flagrant abuse of authority**.

# CHAPTER II
## Hollywood Tow

**Part 1**.                **REPLY INTRODUCTION**

Hollywood Tow ("HT") is sued for conspiring to furnish *fraudulent* credit data to Experian.  **HT ER 384 - 385** and **405**; *see* <u>Opening Brief</u> at 54 - 55.

A credit score is a statistical computation of an individual's likelihood to repay money borrowed.  People are increasingly dependent on their credit scores. The primary factors used to calculate an individual's credit score are credit payment history, time length of credit history, credit type mix and frequency of applications for new credit.  <u>An outstanding *"deficiency claim"* arising from a nonconsensual tow is not a factor.</u>

California bars providing inaccurate information to Experian.  HT schemed to report deficiency claims from nonconsensual tows, <u>even nonexistent tows</u>, to Experian as *"negative"* **credit** information; specifically as <u>defaulted</u> *"monthly"* <u>credit</u> accounts.

The rationale underlying the scheme is that a deficiency claim re a non-consensual tow is <u>not</u> a credit transaction and as such would not impact a credit score.  ***Carvalho***, *infra, at 891.*  Listing deficiency claims <u>as</u> *overdue* monthly credit accounts trashed consumers' credit scores – hustling consumers to pay–even excessive interest.

**Part 2**.        **JURISDICTION**

Extant.

**Part 3**.        **REPLY:  ISSUES PRESENTED**

Precedents and Circuit Rule 28(a)(9)(B)'s implication [5] require a ruling

sufficient to review; **one-sentence** is not.  Requiring remand. *Hagestad, supra.*

**Part 4**.        **REPLY STATEMENT OF THE CASE**

SECTION A.        **REPLY STATEMENT OF FACTS**

HT's brief starts off slanted then quickly slides downhill.  After honestly

conceding this litigation springs from "*inaccurate credit information*," **HT AB**

**5, ¶ 1**, it incorrectly states this "*information reflected **three** credit accounts*."

No; a ***sham*** "*1-month*" interest-bearing credit account.  **DN 8, FAC, p. 56, ¶ 208**.

SECTION B.        **BACKSTORY**

In April, **2002**, HT and Rickenbacker Group, Inc. reached a <u>written</u>

agreement, **DN 204, p. 5;** <u>**Supp ER**</u>**: T4 at 22;** <u>**Supp ER**</u>**: T15**, to furnish

deficiency claims arising from nonconsensual tows to Experian as fake **<u>defaulted</u>**

**<u>credit</u>** accounts.  Such fake information violated California law; Civil Code §

1785.25(a).  As inducement, HT agreed Rickenbacker's cut would be 40% and

---

[5]  The appellant's brief **must contain** . . .  for each issue, a concise
statement of the *applicable* **standard of review** . . . ." <u>Circuit Rule</u> 28(a)(9)(B).

agreed Rickenbacker could **keep** "*interest*" unilaterally tacked onto HT's

*unadjudicated* deficiency *claims*. **Supp ER: T4 at 22, Clause 4** [6]. But,

California law permits **prejudgment** interest **only** for **damages** in an amount

certain. *Evanston Ins. Co. v. OEA, Inc.* (9th Cir. 2009) 566 F.3d 915, 921.

As planned, the defaulted "*credit*" history damaged credit scores providing

forceful incentive to pay money including interest even when neither was owed. [7]

Many victims had sold the car, were not the owner, were unaware of the matter. [8]

---

[6] Garrett repeatedly **falsifies** the deficiency claim as Rickenbacker's debt. The written agreement, **Supp ER: T15;** , did not assign debt. HT insists it did NOT assigned "*anything*". **DN 211 at 1:26-28** and **2:4-6**.

[7] "A *default in payment of goods or services is certainly relevant to potential creditors as a person who defaults on credit payments would be considered less creditworthy than one who does not.*" *Carvalho v. Equifax Info. Servs. LLC* (9th Cir. 2010) 615 F.3d 1217, 1231.

[8] See **DN 8**, FAC ¶¶ 237(b)(i)-(xxv). Answer, **DN 49**, did not deny ¶¶ 237(b)(i)-(xxv); deemed admitted without further proof. FRCP 8(b)(6).
    See, also, e.g., "*Someone called me stating that I owed $1700.00 on a vehicle I never owned.*" **Lily Lopez, 11 Feb 2009**; "*These jerks are SCAMS and read the horror stories about CARLOS CASAS- the RICKENBACKER owner. This office will buy old debts from towing companies and re-aged the accounts from 01/1994 to make it 11/2008.*" **Cinnamon, 19 Mar 2009**; "*I was caught in a fraud ring when we sold our car to someone and that other person was a junkyard worker who then worked with another towing company to fake a tow and got our information from DMV and then worked with this collection agency to get money from us.*" **UGH sick of THESE PPL, 4 Sep 2009**; "*I sold a car in 2004. Evidently, even though I have never received ANY DOCUMENTATION or VALIDITY of the debt, nothing in writing, the car was totaled in 10/2006. Take note: 2006...in 12-2008 I start getting harassing calls from this company demanding $1599.00! I asked where incident happened... 'I don't know', I asked for vehicle VIN, answer: 'I*

**Part 5.**          **REPLY STANDARD OF REVIEW**

The panel may not blink away a judge's disobedience to circuit law and simply affirm *"whether or not the district court"* disobeyed.

**Part 6.**          **SUMMARY OF REPLY ARGUMENT**

Plaintiff's cross-motion for summary judgment was <u>not</u> considered.  In fact, the ruling states **repeatedly** – Defendants' motions granted "**<u>therefore</u>**" Plaintiff's cross-motion denied.   See <u>Order</u>, **DN 276, p. 12, ¶ 2, Line 2, Line 7, Line 13 and Line 14 ("therefore").**  See <u>**Supp ER**</u>**: T2.**

The 2012 July 09 pre-filing injunction came out of the blue.

---

*don't have it!' In yet they expect me to pay, just send $$.  Now they say I owe $1789.00!"* **Consumer Protection Advocate, 16 Sep 2009.**   http://whocallsme.-com/Phone-Number.aspx/4087627280.

**Part 7**.          **DISCUSSION**

SECTION A.          **HOLLYWOOD TOW RULING VIOLATED CIRCUIT LAW WHEN MOTIONS GRANTED "*THEREFORE*" PLAINTIFF'S CROSS-MOTION DENIED**

Subsection (*i*) -    **"*Therefore*" Means "*For That Reason*"**

> "*As already discussed, the Court . . . grant[s] summary judgment in favor of defendants . . .* **_Therefore_**, *the Court DENIES plaintiff's motion . . .*"

Order, **DN 276, p. 12, ¶ 2, Lines 5- 8; Supp ER: T2.**

The **two-sentence** ruling states Defendants' motions "*granted*" "*therefore*" Plaintiff cross-motion "*DENIE[D]*". *Id., Lines 5- 8*.

**_Therefore_** - "*For that reason or that ground or those grounds*" sub verbo "*Therefore.*" Def. 1, **Black's Law Dictionary** (9th ed. 2009) 1616.

"*For that, for that reason*" s.v. "**_Therefore_**." Def. 1, **Webster's Third New International Dictionary**, unabridged, (1986) 2372.

"**_Therefore_**" is an **adverb**. *Infra.* Usually, an adverb tells you when, where, how, in what manner or to what extent an action is performed.

"*Therefore*" = "*Therefore is used as a way of showing how a sentence or clause is related to what has already been said.*" **Macmillan Dictionary**, http://www.macmillandictionary.com/dictionary/british/-therefore (2013-03- 24).

The Order, **Supp ER: T3**, specifies that "[a]s *already discussed* . . . ." The

only matters "*already discussed*" over **10** pages of a **12**-page ruling, were

Defendants' motions and Plaintiff's "*opposition*" to those motions. Plaintiff's

cross-motion was not discussed and never considered. *Id*.

## SECTION B.        ONLY PLAINTIFF'S "OPPOSITION" CONSIDERED

The Order, **DN 276**, repeatedly and solely refers *only* to Plaintiff's

"*opposition*" to Defendants' motions; states that Plaintiff offered "*no evidence*"

( **DN 276, pp. 11-12** ) and concludes "*therefore*" ( **Supp ER: T2 at 17, ¶ 2, Line**

**2, Line 7, Line 13 and Line 14** ) that Plaintiff's motion is denied as moot.

Additionally, the Order fails to rule on Defendants' objections, **DN 211**.

In ***Fair Housing Council v. Riverside Two*** *(9th Cir. 2001)  249 F.3d 1132*,

the Ninth Circuit reversed because the judge ruled the plaintiff had no evidence,

had denied plaintiff's motion as moot and had not ruled on defendants' evidentiary

objections. *Id., at 1137*.  The instant Order, **DN 276**, *is **Fair Housing Council***.

In discussing the parties' opposing arguments, in **10** of 12-pages, the Order,

pp.1, 2, 4-11, **Supp ER: T3**, speaks *only* to Plaintiff's "*opposition*".  See Order,

**Supp ER: T3**—at **10:27**; at **11 n.3**; at **12:9**; at **12:16**; at **12:24**; at **14:4**; at **14:6-7**;

at **15:15**; at **16:23**; at **16:25**--referring *only* to "*opposition*."

SECTION C.    **NONE SO BLIND AS ONE WHO WILL NOT SEE — SMOKING GUN EVIDENCE OF CONSPIRACY**

No difference if Plaintiff were represented by Clint Eastwood's empty chair. Snyder, j., feigns no "*plausible grounds for **inferring** an . . . agreement*" presented. **Supp ER: T3 at 13:7-10.** Defendant's brief echoes this biased claptrap.

**Infer!** The <u>written</u> agreement was presented. **Supp ER: T15.** <u>Unable to vanquish the written agreement, everyone pretends not to see it.</u> HT and Rickenbacker Group ("RG") agreed RG would chivy motorists over HT's "*deficiency claims*", **Supp ER: T15, Clause 1**, crossing the line by agreeing to tack on "*interest*", *id.*, **Clause 4**, not allowed under California law, squeezing people by *knowingly furnishing* deficiency claims, **real or not**, as defaulted "*credit*" accounts of "*1 month*" terms, **Supp ER: T6, Line 16**, (violating Cal. <u>Civil Code, § 1785.25(a)</u>) to Experian then refusing to delete this information unless money plus interest was paid; this happened to us. **Supp ER: T8 at 32-33.**

Ironically, the conspirators' push <u>all</u> blame onto Experian for inaccurately reporting the deficiency claims as defaulted credit accounts ("*because <u>Experian classified the</u> lawful debt <u>owed to Hollywood Tow</u> . . . <u>a 'credit account' in his credit report</u>* . . . ." <u>Defs' Summ. J. Mo.</u>, **Supp ER: T16: 14-16.** [9] No honor amongst thieves?

---

[2] Besides, RG, information furnisher, was required to cause the inaccuracies to be deleted or permanently blocked. <u>15 U.S.C. § 1681s-2(b)(E)(ii) & (iii)</u>.

SECTION D.        **REPORTER'S TRANSCRIPT COST AWARDED TO JUAN CASAS, RICKENBACKER GROUP, INC. AND HOLLYWOOD TOW–BUT <u>NO SUCH TRANSCRIPT</u>!**

Parenthetically, we must settle what was actually awarded; that being **<u>reporter's</u>** transcript costs—**<u>not</u>** "*deposition costs*".

Defendants' costs bill <u>averred</u> expense of a **reporter's** transcript. **HT ER 61**. We moved to tax the cost of the **reporter's** transcript. **HT ER 46:17-28**. Denied. **HT ER 32**. Ergo, Defendants awarded expense of **reporter's** transcript. <u>All parties agree there was **never** a reporter's transcript.</u>

Defendants' *dog-ate-the-homework* apologia is boneless. Inattention to clerical chores is <u>not</u> good cause. ***Denofre v. Transportation Insurance Rating Bureau** (7th Cir. 1977) 560 F.2d 859, 861*. Besides, their lawyer had a *duty* to make reasonable inquiry, <u>FRCP 11(b)(3)</u>, which it **certified** had been made, *id*. Swearing to this under oath.

Surprisingly, Defendants want Plaintiff to shoulder <u>their</u> lawyer's failure to comply with Rule 11(b)(3), to accept <u>their</u> lawyer's disdain for the laws of certitude and to go along with <u>their</u> lawyer's poor work ethic. Such is not the law. ***Link v. Wabash Railroad** (1962) 370 U.S. 626, 633*. Defendants freely selected their lawyer. *Id*. Freedom has a price, in this case about $832 dollars.

SECTION E.    **ABSOLUTELY NO NOTICE OR OPPORTUNITY TO BE HEARD PRIOR TO PRE-FILING INJUNCTION; WHICH CAME OUT OF THE BLUE**

Before entry of the 2012 July 09 pre-filing injunction, due process required notice and opportunity to be heard,   Neither occurred.

Answering that a *"**sua sponte** modification"* of a prior order is indefectible re lack of notice and/or lack of opportunity to be heard, **HT AB 25**, Defendant *inexplicably* cites **Kingvision Pay-Per-View, Ltd v. Lake Alice Bar** *(9th Cir. 1999) 168 F.3d 347,* a case on all fours with our position that without notice or chance to be heard, the 2012 July 09 pre-filing injunction, **Supp ER: T1 at 4, ¶ 1,** must be reversed. *Id., at 351-52.*

A pay-per-view company, Kingvision-Pay-Per-View, Ltd, licensed broadcast rights to boxing events; discovered some sports bars also broadcasting these fights and sued.  The bars, served by registered process servers, failed to respond and their defaults and default judgments were entered.

However, without prior notice or allowing Kingvision an opportunity to be heard, the district judge <u>modified</u> a default judgment.  Because the modification *"came out of the blue"*, the Ninth Circuit reversed.  **<u>Likewise, the 2012 July 09 pre-filing injunction came out of the blue</u>**.

Defendant insinuates the 2012 July 09 pre-filing injunction is not reviewable. An injunction is reviewable. **_Knapp v. Northwestern Univ._** _(7ᵗʰ Cir. 1996) 101 F.3d 473, 478._ Modification of an injunction is likewise reviewable. 28 U.S.C. § 1292(a)(1).

The Ninth Circuit rule is that pre-filing injunctions infringe on a fundamental constitutional right, are to be **<u>rarely</u>** issued, **<u>must</u>** meet due process requirements of notice and opportunity, **<u>must</u>** present substantial findings and **<u>must</u>** be narrowly tailored to fit the specific circumstances at issue. This Court's sister circuits that have considered the issue are in accord. **<u>10/</u>**

SECTION F.          **UNSUPPORTED ATTACKS ON PLAINTIFF**

After accusing Plaintiff of everything but sleeping with a dead girl or being in bed with a live boy, <u>Liedle, Lounsbery, Larson & Lidl, LLP</u>, while urinating on Circuit Rule 28-2.8, misrepresents that "_<u>on July 19, 2010, plaintiff filed a new FCRA action against</u>_ **_<u>Experian, Rickenbacker, Juan Carlos Casas</u>_** _<u>. . . 10-5296 (C.D. Cal. July 19, 2010), ECF No. 1.</u>_)" **<u>False</u>**. The Jewish law firm made that up. _Literally._ Its other rants, equally mendacious, are denied.

---

[10] _**In re Powell** (D.C. Cir. 1988) 851 F.2d 427, 431; **In re Oliver** (3d Cir. 1982) 682 F.2d 444, 445-446; **In re Hartford Textile Corp.** (2d Cir. 1979) 613 F.2d 388, 390; **Brow v. Farrelly** (3ʳᵈ Cir. 1993) 994 F.2d 1027, 1038; **Procup v. Strickland** (11ᵗʰ Cir. 1986) 792 F.2d 1069, 1074; **Castro v. United States** (1ˢᵗ Cir. 1985) 775 F.2d 399, 410; **Pavilonis v. King** (1ˢᵗ Cir. 1980) 626 F.2d 1075, 1079._

Section G.          **DEFENDANT SAYS 2012 JULY 09 ORDER ARISES FROM VEXATIOUS CONDUCT.  FALSE.  ABSENT TIME TRAVEL— REMAND TO ANOTHER JUDGE**

Snyder, j., in denying our reconsideration motion, insists our arguments had been "***previously rejected***."  **Supp ER: T1 at 1, ¶ 3**.     We have taken the unapologetic position that this Jewish judge is biased and corrupt.  Here, she finds directly that:  "*Because plaintiff's motion merely reasserts **previously rejected** arguments, the Court finds no occasion to **revisit** its **ruling**.*"

Liedle, Lounsbery, Larson & Lidl, LLP says Snyder's finding especially proves why the 2012 July 09 pre-filing injunction issued.  Liedle, etc., says:

> "*plaintiff sought reconsideration of the court's grant of summary judgment in favor of defendants and against plaintiff without adequate grounds for such reconsideration.  As the Order points out, plaintiff's motion merely **reasserts previously rejected** arguments*.  ER 30."

**HT AB** 23, ¶ 2.

Previously rejected?  Order, **DN 306, ¶ 3**; **HT AB 23, ¶ 2**.  Revisit ruling? Order, **Supp ER: T1 at 1, ¶ 3**.  Snyder, j.'s statements are patently **false**, made with a deliberate intent to deceive.   Remand to a different judge is required.

On **2010 August 13**, Plaintiff cross-moved for summary judgment. **DN 174.**

On **2010 September 07**, Plaintiff filed evidentiary objections. **DN 226.**

On **2010 October 04**, Snyder, j., *sua sponte*, (1) granted Defendant Robinson summary judgment, (2) refused to rule on Plaintiff's evidentiary objections, (3) denied Plaintiff's cross-motion as moot and (4) relied on *unidentified* deposition statements. Order, **DN 276**; **Supp ER: T3**.

We could not have known of the **2010 October 04** *sua sponte* grant, the **2010 October 04** denial of our cross-motion, the **2010 October 04** refusal to rule on our objections and Snyder, j.'s **2010 October 04** reliance on unspecified deposition statements—and requested reconsideration—*before* **2010 October 04**—***absent time travel***—any reconsideration request would have to have occurred *after* **2010 October 04**. And, in fact, we did move for reconsideration *after* all of the above had occurred; *after* **2010 October 04**.

On **2011 March 22**, we moved for reconsideration, **DN 289**, of (1) summary judgment grant to Robinson; (2) failure to rule on objections; (3) denial of our cross-motion as moot and without consideration and (4) clarification. *Id*.

But Snyder, j., says that at a temporal point before **2011 March 22**, we "***previously asserted***" the above and, claims Snyder, j., she "***visited***" these assertions and "***ruled***". **Supp ER: T1 at 1, ¶ 3**.

If our arguments were, as Snyder , j said, "***previously asserted***", same would appear in the record <u>*between*</u> **2010 October 04** <u>*and*</u> **2011 March 22**. Simple.  Nothing appears.  <u>**Supp ER**</u>**: T14**.

If these "***previous***" assertions were, as Snyder, j., emphasizes, already "***visited***" by her and she had "***ruled***", there would be a ruling(s) <u>*between*</u> **2010 October 04** <u>*and*</u> **2011 March 22** in the record.  But— nothing.  <u>**Supp ER**</u>**: T14**.

**Part 8**.        **CONCLUSION**

No waiver of the Rule 59(e) motion denial.  See ***Trigueros v. Adams*** *(9th Cir. 2011) 658 F.3d 983, 988.*

We are truly amazed stones are being cast at us by a law firm commit-ting wholesale rules violations, distortions of facts and record while representing a towing company that participated in a <u>**decade-long**</u> unlawful interest-charge scam. "*Indeed, even simple interest may be substantial as evidenced by the millions of dollars of interest accrued here.*"  *278 Cal.4th at 553.*

Absent **time travel**, Snyder, j., lied.  Again.

# CHAPTER III
## Experian Information Solutions, Inc. & Nathaniel Peardon Garrett

**Part 1**.          **REPLY INTRODUCTION**

November *or* June of 2007, the <u>Hollywood Tow–Rickenbacker Conspiracy</u>

informed Experian that Plaintiff had defaulted on an interest-bearing credit

account of "*1-month*" term with Hollywood Tow ("HT").   On 2008 October 08,

Experian published Plaintiff's credit report to Worldnet Recovery System, **Supp**

**ER: T8 at 33, ¶ 20**, that a credit transaction between Plaintiff and HT occurred in

June 2007.  *Id.*  Plaintiff disputed <u>direct</u> to Experian the accuracy of this

information; disputing that a credit transaction with HT had occurred in June of

2007 or ever.  *Id., ¶ 19*.  Plaintiff <u>did not dispute</u> owing HT a debt <u>but did dispute</u>

that the debt was interest-bearing.  **Supp ER: T10, Experian Confirmation**,

confirming ("*interest charge is being disputed*").   Experian acknowledges

receipt, *id.,* but Rickenbacker denies Experian gave it notice of the dispute.  **DN**

**172 at 10:16-18** citing **Angst Decl. Supp ER: T11, ¶ 7.**   Experian is sued for

willful / negligent failure to conduct a reinvestigation, **FAC, DN 8, pp. 58-62**, and

willful / negligent failure to adopt reasonable procedures, **FAC, DN 8, pp. 63-69**.

Nathaniel Peardon Garrett—the guy you hire when you need a defense to a lawsuit and do not actually have one—opens Experian's Answering Brief with all the precision of a grenade explosion, savaging Plaintiff for what he says is a "*vexatious pattern of repeatedly filing meritless pleadings in a series of lawsuits stemming from debts related to the towing and storage of his vehicles*," **Experian AB 1, ¶ 1**. There might be some force to his adjectival Niagara were he not yet casually micturating on the truth, on his three "*actually litigated*" "*towing disputes*" and on circuit rules while pontificating that we are the bad guys. The chap needs help.

## **Part 2**.            **JURISDICTION**

Uncontroverted.


## **Part 3**.            **BACKSTORY**

Some ethnicities see dollar signs not people thus Garrett's recurring cavil about "*failure*" to pay "*tows*". <u>Fortunately, no one has ever gone to hell for not paying the bill dumped on him by government.</u>

Plaintiff litigates re reportage of inaccurate credit information.


## **Part 4**.            **REPLY PROCEDURAL BACKGROUND**

Controverted.

**Part 5**.                 **REPLY RE STANDARD OF REVIEW**

Garrett points to no authority fulfilling his fantasy of this Court leapfrog-ging over a trial judge's disobedience of circuit law. Fatal to his phantasm, the Ninth Circuit is **not** a *nisi prius* court. Thus, in **Fair Housing Council**, *supra, 249 F.3d 1132*, rather than separately consider *de novo* the cross-motions, the Ninth Circuit reversed because the **district judge** had failed to separately consider them in the first instance. *Id., at 1136*.

Same here. Snyder, district judge, was required by precedent to *separately* consider each motion in the first instance. Didn't happen. Defendants' motions were granted "*therefore*" Plaintiff's cross-motion was denied. A Ninth Circuit panel may not disregard precedent—**Miranda B. v. Kitzhaber** (9th Cir. 2003) 328 F. 3d 1181, 1185—the upshot of ignoring Snyder, j.'s own disregard of precedent, eviscerating its holding in **Fair Housing Council**.

**Part 6**.                 **SUMMARY OF REPLY ARGUMENT**

Mr. Garrett has junked his Appeal No. 11-57172 invention of Plaintiff in this **2009 Case** having "***actually litigated***" "***three disputed tows***." [11] This case—**which has nothing to do with tows**—is about dates, term, balance, amount of interest of a single purported interest-bearing credit account of "*1-month term*."

---

[11] See Appellant's Request for Judicial Notice at 4 (this Appeal 12-56464, **DktEntry 24**, filed 02/112013).

Garrett's assertions that Snyder, j., considered our cross-motion and that we had notice and a chance to respond to the pre-filing injunction are pure canards.

**Part 7**.          **REPLY DISCUSSION**

One does not cheat if holding the winning hand nor lie if the truth will serve.

SECTION A.          **MR. GARRETT PROMISED THIS COURT THREE "*TOWS*" AND THREE "*TOWING DISPUTES*" WERE "*ACTUALLY LITIGATED*" IN THIS CASE; A PROMISE BROKEN**

Missing from Experian's brief is the roadmap locating where in this case, as Mr. Garrett had promised in Appeal No. 11-57172, Plaintiff "***actually litigated***" "***three disputed tows***" or any tows!

Trying but failing to weave fiction and reality into one tapestry, **Experian's AB** presents word soup—of one credit account (*e.g.,* 5, ¶ 30), three collection accounts (*e.g.,* 6, ¶ 2), a single tow (*e.g.,* 7, ¶ 1), several tows (*e.g.,* 13, ¶ 1), a single credit report (*e.g.,* 6, ¶ 1), several credit reports (*e.g.,* 7, ¶ 4)—but no "***actually litigated***" "***three disputed tows***".  Indeed, our <u>Opening Brief</u> plumbed the pleadings and this litigation; finding <u>no</u> disputed tows.

Mr. Garrett <u>now</u> harangues about a "*consumer file disclosure*" (see **Experian AB at 6, n. 3**).  He is not sincere.  Experian published to third parties including Worldnet Recovery System, *ante* at 22, making it a "*consumer* [credit] *report*".  **Lee v. Security Check, L.L.C.**, *2010 U.S. Dist LEXIS 82630, ** 30, 31.*

SECTION B.          **LIKE THE WIZARD OF OZ, GARRETT IS ALL SMOKE AND MIRRORS:  <u>NOT</u> <u>ONCE</u> SHOWING WE EVER LITIGATED THE LEGAL VALIDITY OF ANYTHING**

Without clicking his heels, Mr. Garrett regurgitates "*legal validity*" "*legal validity*" "*legal validity*"— <u>nine</u> times. [12]; hoping to make it *appear,* by sewing machine repetition, that we are somehow litigating the "*legal validity*" of debt.  Nine times!  Not once any reference locating support in the record.  See <u>Circuit Rule 28-2.8</u>.  **Not once**.

We *emphatically* affirmed the legal validity of tows was <u>not</u> at issue, [13] stressing the evidence showing this case was about inaccurate  information [14] "*not about three 'debts'* . . . ."  *Id.*, Order, **Supp ER: T3 at 10:26-27.**

_____

[12] Experian's <u>Answering Brief</u>:  Page 1, ¶ 2; Page 7, ¶ 1; Page 10, ¶ 1; Page 13, ¶ 1; Page 20, ¶ 2; Page 21, ¶ 1; Page 21, ¶ 2; Page 22, ¶ 1 and Page 25, ¶ 1.

[13] ". . . the **uncontroverted facts** above prove that the "*legality of tows*" is <u>not</u> at issue in this case [**UFN 7**], [**UFN 10**] - [**UFN 24**], . . . ."  **DN 196 at 3:22-23**. (Emphasis in original)  **Supp ER: T5.**

[14] "This litigation is ***not*** about three "*debts*" [**UFN 1**] but eight ( 8 ) certain "***items of information***" (Pltf. Depo. 90:11) both <u>inaccurate</u> [**UFN 1**] . . . ."  **DN 196 at 7 (<u>Supp ER</u>: T6)** – ***listing the inaccurate information***.  (Emphasis in original).  See **DN 194 (<u>Supp ER</u>: T7)**, Item #2, at 2-3. (same).

<u>There is nothing in the record pointing to Plaintiff challenging the legal validity of anything</u>.  But Mr. Garrett, undaunted, says that disputing any item of credit information as inaccurate is the same as disputing the **<u>entire</u>** debt as legally invalid.  For example, Plaintiff disputes the date as inaccurate, Mr. Garrets says this "*is <u>merely another way of arguing</u> that his account is inaccurate because <u>the underlying debt is **legally invalid**</u>.* "  **Experian AB  22, ¶ 2**.  Crazy.

We get it; we understand lawyers say outrageous things.  But still.  Reading Garrett's missives makes one feel impatient in a vaguely paternal way, like when you see a lovely but irritating wild child running naked around the playground, shouting "*penis*" at everyone and peeing in the sandbox.

Yes, yes, creative lawyering expresses in many ways, and it's good to know the correct terms for male genitalia, but at some point someone needs to put that kid's clothes back on and show him where the bathroom is.

Mr. Garrett's fruity argument that by disputing credit information as inaccurate, the consumer is actually saying "*the underlying debt is **legally invalid**,*" **Experian AB 22, ¶ 2**, needs a frank response.  Someone needs to tell him that his argument is just plain nutty and point him to the bathroom.

Under circuit law, disputing a reported debt as owed or terms correctly reported disputes the **accuracy** of the information.  ***Gorman v. Wolpoff & Abramson, LLP** (9th Cir. 2009) 584 F.3d 1147, 1163-1165*.  Garrett disagrees.

According to Mr. Garrett, when a motorist says Experian misreports the interest on his automobile financing, the consumer is actually saying his car loan is "*legally invalid* " and must sue General Motors!

Mr,. Garrett says when mom urges Experian gives too high a balance owing re her refrigerator what the housewife is actually saying is that her purchase contract is "*legally invalid*" and should sue Maytag.

Experian misrepresents a credit card account in default as yours when you insist it is not even your account; Garrett interprets this as "*actually litigating*" VISA being "*legally invalid*" and says you must attack Bank of America.

Nuts.

Equally nuts is Garrett's position Plaintiff's deposition *opinions* control. While Mr. Garrett knows how to artfully nail down a <u>*sham*</u> point with a hint or a line, too often he seems so busy looking for a tree to pee on, he forgets to consider the breadth and depth of the forest that surrounds him; the forest is the FCRA.

Simply put, in the context of an FCRA dispute, under the FCRA's statutory scheme, ***only*** the <u>consumer</u> defines the scope of the dispute but under this very same statutory scheme the consumer may ***not*** amend or expand the scope of the accuracy dispute beyond his or her ***<u>initial</u>*** definition.  Experian is fully aware of this rule. **Herisko**, *infra*.  Experian *successfully* briefed the Ninth Circuit on this point; that a consumer may <u>not</u> go outside the <u>initial</u> dispute notice.

SECTION C.        **ASSERTIONS —**

- **Three Collection Accounts**
- **Deposition Testimony**
- **Letter to Rickenbacker**

**— ARE A FRAUD ON THE COURT**

**Subsection** (*i*)        <u>**Three Collection Accounts and Little Green Men**</u>

Garrett hopes to advance the pretense Plaintiff sues over "*three collection*

*accounts*" by asserting Snyder, j. <u>could</u> consider "*other material*".  **<u>Experian AB</u>**

**<u>7, n. 4</u>**, alluding to Kimberly Hughes' (Experian employee) declaration.  He cites

***Apache Survival Coalition v. United States*** (*9th Cir. 1994*) *21 F.3d 895* for his

<u>wild idea Hughes' declaration amends the FAC</u>.  Mr. Garrett's desperate grab at

***Apache Survival Coalition*** fails; the case does <u>not</u> displace the rule that ***the***

***pleadings frame the issues actually litigated***, <u>Opening Brief</u> at 40, certainly

does not empower a **<u>defendant</u>** to amend a complaint nor render *relevant* matter

*exceeding* the limits of an **<u>initial</u>** FCRA dispute notice.  ***Herisko***, *infra*.

Rather, ***Apache Survival Coalition*** instructs that when the **plaintiff**, in

**opposing** a motion, raises an issue outside the scope of the complaint, the district

court *may* consider it as a "*Rule 15(b)*" **request** to amend the complaint out of

time.  *<u>Id</u>., at 910*.  Hughes' declaration presents a situation completely

distinguishable from ***Apache Survival Coalition***.

Kimberly Hughes is <u>not</u> a plaintiff nor even a party; a non-party declaration obviously may not be construed as a <u>Rule 15(d)</u> **plaintiff** request to amend the FAC. <u>15</u>/

Garrett's argument is (1) **Hughes'** declaration was filed; (2) **Hughes'** declaration describes "*three collection accounts*"; so (3) **Plaintiff** "*actually litigated*" "*three collection accounts*" is a bridge too far. What if Experian filed a declaration expounding little green men; could it then argue that Martians were "*actually litigated*" in this case? <u>16</u>/

> **Subsection** (*ii*)    **Experian's Assertion Of Plaintiff's Deposition *Opinions* And Assertion Of Plaintiff's Letter To Rickenbacker Approaches Fraud On The Court**

The FCRA imposes duties on Experian. <u>15 U.S.C. § 1681a(f)</u>. One of the duties, the "*reinvestigation*" duty, <u>15 U.S.C. § 1681i</u>, is triggered only when "*the completeness or accuracy* [of the information] . . . *is disputed by the consumer* <u>and</u> *the consumer notifies* [Experian] *directly . . . of such dispute.*" <u>15 U.S.C. § 1681i(a)(1)(A)</u>.

---

<u>15</u> FRCP Rule 15(b) is limited to pleadings requiring a response; an answer does not so require.

<u>16</u> We note the spectacularly incorrect statement: "***B. Plaintiff Obtains His Consumer File Disclosure And Unsuccessfully Disputes Collection Accounts Arising From Three Tows,***" <u>Experian AB</u> at 5. A motion for sanctions will follow.

Without notification, Experian generally has no duty to reinvestigate credit information. ***Casella v. Equifax Credit Info. Servs.*** *(2nd Cir. 1995) 56 F.3d 469, 474.* Moreover, the duty to reinvestigate is <u>not</u> unlimited; the duty is boxed by the initial dispute identification.

<u>The FCRA requires that a consumer notify Experian directly of the existence and nature of a dispute for an obvious reason</u>. *See **Petty v. Equifax Info. Servs., LLC**, No. CCB-10-694, 2010 U.S. Dist. LEXIS 113159, 2010 WL 4183542, at \*\*9-10 (D. Md. Oct. 25, 2010)* ("*The* [FCRA] *requires that a consumer notify* [**Experian**] *of the existence and nature of a dispute for an <u>obvious reason</u>: <u>Without notice</u> of a consumer's dispute, including an explanation of why a consumer believes his or her report is inaccurate or incomplete,* [**Experian**] *generally <u>would not know what information to reinvestigate</u>, <u>how to reinvestigate it</u>, or <u>whether</u> upon reinvestigation the information is <u>indeed inaccurate or incomplete</u>.*").

Mr. Garrett fails to inform that Experian previously successfully asserted that the initial notice of dispute **strictly limits** the issues. Under the FCRA statutory scheme and federal cases, **<u>Plaintiff may not litigate other than the dispute initially provided to Experian</u>** and, as such, Plaintiff's deposition "***opinion***" and, absolutely, Plaintiff's letter **<u>to</u>** Rickenbacker Group is irrelevant.

Additional or other allegations and clearly ***opinions*** for which we did not **initially** provided notice **to** Experian are disregarded. ***Herisko v. Bank of America*** *(9th Cir. 2010) 367 Fed. App'x 793, 794* (affirming summary judgment for **Experian** because the complaint alleged an inaccuracy <u>different from</u> the inaccuracy referred to in the initial dispute letter). [17]/

Experian was and is fully aware at all times of ***Herisko***, *supra*. It was the prevailing party; its ***Herisko*** position?—the initial dispute notice boxes the issues.

When a consumer later sues Experian for a violation of its reinvestigation duty, he or she may only sue based on alleged inaccuracies the consumer initially identified to Experian. ***Herisko***, *supra;* ***Wickstrom v. Experian***, *2010 U.S. Dist. LEXIS 65477, **13-14 (W.D. Mich. 2010)*; ***Nielson v. U.S. Bank***, *2005 WL 189709 (D. Minn. Jan 26, 2005)*; ***Kettler v. CSC Credit Service, Inc.***, *2003 U.S. Dist. LEXIS 14424, *7 (D. Minn. 2003); Cf.*, ***Yolder v. Credit Bureau of Montgomery, L.L.C.*** *(M. D. Ala. 2001) 131 F.Supp.2d 1275, 1289*. The ruling on Experian's motion for summary judgment should have been <u>based on</u> Plaintiff's initial notice of dispute. *Ante, op. cit.*

Further, Experian is judicially estopped from its flip-flop that a later letter **not even addressed to it** or deposition ***"opinion"*** <u>**two years after the fact**</u> may

---

[17] We may cite unpublished opinions generally issued after 2007. Federal Rule of Appellate Procedure 32.1(a). We cite the case not for its precedential value but persuasive reasoning and judicial estoppel.

alter the equation when it successfully prevailed on earlier diametrically opposing argument in **Herisko**. *See* **Hampshire v. Maine** (2001) 532 U.S. 742, 749.

What triggered and framed Experian's *duty* to reinvestigate was Plaintiff's notice <u>direct</u> to Experian that credit account information was inaccurate. A letter <u>**to**</u> Rickenbacker does not affect the calculus and is irrelevant as to Experian.

Thus, the operative question here is what did Plaintiff initially identify <u>to</u> Experian as the dispute? The answer is in the records:

> "*On or about 2008 October 19, Plaintiff informed Experian that Plaintiff did not and never had owed Hollywood Tow an indebtedness **arising out of** a credit transaction, had never participated in a credit transaction with Hollywood Tow, and <u>did not and never had a credit account with Hollywood Tow</u> at all nor in any amount.*"

**First Amended Complaint**, p. 16, ¶ 69; **Experian ER 42, ¶ 69.**

> "***Additional Information that you provided***: *Absolutely no **interest** is owned or accruing to Hollywood Tow or Rickenbacker.*"

**Experian's** <u>Email Confirmation</u> [18] to Plaintiff, **DN 173, p. 12**, <u>Exhibit "D"</u>;

**Supp ER**: T10. But, *Experian **never** undertook a reinvestigation.*

---

[18] Experian **confirms** an interest charge is being disputed; **not** some underlying debt, **not** towing, **not** "*three collection accounts*".

**Subsection** (*iii*)    __Deposition Renditions Are Twisted And Distorted__

Before we proceed we wish to note two particularly disturbing falsehoods.

> "***In his deposition***, . . . *Plaintiff contended that*
> *Experian cannot report the debts stemming from his*
> *tows because the legal validity of the underlying tows*
> *has not yet been adjudicated.*"
>
> __Experian AB 1, ¶ 2__

and

> "*Plaintiff also maintained that . . . credit reporting*
> *agencies ("CRA") like Experian can no longer*
> *report debts stemming from involuntary tows.*"
>
> __Experian AB 2, ¶ 1__

Both statements by Mr. Garrett are magnificently false.  And, so what?

Plaintiff could have maintained at his deposition that he **believes** in the Easter

Bunny, Santa Claus or honest lawyers; so what?

Except, Plaintiff actually testified as follows:

> ". . .  the lawsuit is based upon
> information reported by Experian — . . .
> the lawsuit is based upon information
> reported by Experian is incorrect. That's
> inaccurate.The information Experian reported as
> __the basis of this litigation is inaccurate__
> __information__."
>
> __Experian ER__ 156:10-16.

Plaintiff <u>never</u> testified that Experian could not report debts stemming from tows. Mr. Garrett just literally made that up. **Plaintiff testified that the basis this lawsuit against Experian was inaccurate information**. *Id*.

Plaintiff also never testified that following ***Pintos*** Experian could not report certain debts. **Experian ER 150-166**. Mr. Garrett also literally made that up.

Garrett has ***repeatedly*** represented to this Court that Plaintiff is somehow challenging the "*legal validity of the underlying tows*." See, *e.g.*, **Experian AB 1, ¶ 2**. The trick, discussed thoroughly in Appeal 13-55378, is "*propaganda*".

Note this:

> "So as I understand it, you are disputing
> the accuracy of the Rickenbacker accounts for
> several reasons; correct?
> A    Yes.
> Q    <u>One of those reasons is that you believe</u>
> <u>that Hollywood Tow illegally seized those vehicles;</u>
> <u>correct?</u>
> A    <u>No</u>."
>
**Experian ER 153:3-14**.

Garrett also gives **partial** selective quotes from Plaintiff's deposition but buries this—**Plaintiff was merely expressing his opinion:** "***That is my opinion***." **Experian ER 158:19**.

SECTION D.        **DISSEMBLING CREDIT INFORMATION AS ACCURATE IS HIGH SCHOOL DEBATE 101**

"*Plaintiff has failed to identify the existence of a factual inaccuracy in his consumer disclosure file*" **Experian AB at 19.** His credit report! We identified several. **Opening Brief at 44.** And see DN (**Supp ER: T6**) 194; DN (**Supp ER: T8**) 175 and DN (**Supp ER: T9**) 174-1 Mr. Garrett's "*reversal in reality*" play was taught us in high school debate class.

A plaintiff may present evidence "*to show that* [Experian] *prepared a report containing inaccurate information.*" '**Guimond v. Trans Union Credit Info. Co.** (9th Cir. 1995) 45 F.3d 1329, 1333 citing **Cahlin v. Gen. Motors Acceptance Corp.** (11th Cir. 1991) 936 F.2d 1151, 1156. In **Gorman v. Wolpoff & Abramson, LLP**, the Ninth Circuit determined that information in a credit report may be *"inaccurate or incomplete"* if it is "*patently incorrect*" or "*materially misleading.*" *584 F.3d at 1163.* In considering whether the credit report was inaccurate, the Ninth Circuit looks to the "*patently incorrect or materially misleading*" standard as articulated in **Gorman.** **Carvalho**, *supra, 629 F.3d at 890-91* citing **Gorman**, *584 F.3d at 1163.*

**Carvalho** gives (1) contending an item of information such as a collection account does not pertain to the consumer, or (2) the amount is too high, or (3) a date is wrong as *examples* of inaccuracy. *629 F.3d at 891.*

**Page 36 of 43**

We submitted substantial evidence that: (1) the credit account does not pertain to Plaintiff, **DN 175 (Supp ER: T8)** ¶ **10**; (2) the amount is too high, **DN 175 (Supp ER: T8)** ¶¶ **15, 16**; (3) dates are wrong, **DN 175 (Supp ER: T8)** ¶ **19**. The furnisher, Rickenbacker, agreed—wrong date <u>and</u> wrong term. *See* <u>Opening Brief</u> at 44, ¶¶ 1-2.

Plaintiff's moving papers, **DN 174**, and evidence, , *e.g.*, **DN 173** and **DN 175**, although <u>never</u> considered below, fit **Carvalho** on all fours and establish a violation of the FCRA–<u>15 U.S.C. § 1681e(b)</u>.

For example, the dates are incorrect, see **DN 188** at 7, Lines 3-27, Nos. 18 - 21, the term of the credit account is wrong, <u>Angst Decl</u>, **DN 170-2 (Supp ER: T11, ¶ 7)**, and the interest amount is in error. See <u>Waters Decl.</u>, **DN 175**, *supra*.

In fact, Rickenbacker's testimony infers another FCRA violation. (**Supp ER: T11, ¶ 7**) ("*. . . the records of Rickenbacker do not show that any* [notice] *was received from Experian confirming a dispute of this tow account . . . .*"

In ways both big and small, Garrett's tale the credit information is not inaccurate easily unravels. Thus, his oblique orison for *de novo* review is unwise.

First, Rickenbacker Group, Inc. **disputes** furnishing some of the information which it **<u>admits</u>** to be inaccurate, <u>Opening Brief</u> 44, ¶¶ 1, 2, raising a *reasonable inference* of a FCRA violation. **Guimond**, *supra, at 1333.*

Garrett's attempts to *spin* this *reasonable inference* like a Pepsi commercial is wide of the mark, missing entirely the second reason *de novo* review disfavors Experian.  By denying furnishing information, Rickenbacker effectively admits never verifying information; verification the FCRA required Experian to obtain.  15 U.S.C. § 1681i(a)(1)(A).  Another triable issue.

The third reason *de novo* review would be an unwelcomed experience for Experian?   It was required to give notice that Plaintiff disputed the accuracy of the credit information.  Plaintiff gave notice direct to Experian of the dispute.  *See* **Opening Brief at 45, ¶ 3**.  Experian confesses receipt,  **Supp ER: T10**, and concedes it has no record of forwarding notice to Rickenbacker.  **Opening Brief 45, ¶ 3**. Rickenbacker, in turn, says it did not receive notice of the dispute from Experian. **Supp ER: T11, ¶ 7**.  Significantly, Experian never claims giving notice.  *See* **Experian AB**, *passim*.  A jury could easily find Experian did not give notice, violating § 1681i(a)(1)(A).  **Gorman**, *supra, 584 F. 3d at 1156*.

Fourth, as noted above, a *nisi prius* review of our moving papers and supporting declarations and exhibits would easily find triable material issues. [19]

_____

[19]  **Some housekeeping**: Mr. Garrett claims he submitted a copy of Plaintiff's credit report under seal. **Experian AB 4, n. 2**.  Flat out false; the submission is contrived.  He says HT is Plaintiff's "*lien creditor*", **Experian AB 17, ¶ 1**, displaying incognizance of lien sales; a lien sale **extinguishes** the lien. California Vehicle Code, § 3068.1.  He argues HT as Plaintiff's "*creditor*," saying HT somehow provided Plaintiff "*service*" and "*later demanded payment*." *Ibid*. Nonsense.  HT provided a "*contract*" service to City of Los Angeles.  **Experian AB 3-4**.  **Law imposed** liability on us to pay for the "*service*".  § 3068.1.

SECTION E.        **SAYING CROSS-MOTION WAS CONSIDERED RAPES THE PRIME DIRECTIVE OF COMMUNICATIONS:** *"USE LANGUAGE ACCURATELY AND HONESTLY, STATING ONLY THE TRUTH"*

Using elementary principles of grammar re <u>adverb</u> function, using the common definition of the <u>adverb</u> *"therefore"* as well as using ordinary English reading skills to parse the <u>Order</u>, **DN 276**, for *any* discussion of Plaintiff's cross-motion ineluctably arrives at the conclusion that Defendants' motions for summary judgment were granted *"therefore"* Plaintiff's cross-motion was denied without consideration—trespassing circuit law.  <u>Opening Brief</u> at 35, 36, 54, 55.

Garrett shamelessly asserts that *"the district court's order plainly reveals that the court did consider Plaintiff's motion,"* **Experian AB 13, ¶ 2**, and *"however, it is <u>clear from the record</u> that the district court did consider the evidence sub-mitted by Plaintiff"*. ***Id.*, at 24, ¶ 24**. **<u>Not</u>** true.  No reference to where in *"the record"* this clarity is located.  The assertions **<u>are</u>** false.

The <u>Order</u>, **<u>Supp ER</u>: T3**, granting defendants' motions and *"therefore"* denying Plaintiff's cross-motion speaks only to Plaintiff's **opposition**; **<u>10</u>** pages of the **<u>12</u>**-page <u>Order</u> speak *only* to Plaintiff's *"**opposition**"* — (internal pages) <u>5</u>:27; at <u>6</u> n.3; at <u>7</u>:9; at <u>7</u>:16; at <u>7</u>:24; at <u>9</u>:4; at <u>9</u>:6-7; at <u>10</u>:15; at <u>11</u>:23; at <u>11</u>:25.

SECTION F.        **NO NOTICE, OPPORTUNITY OR REASON RE PRE-FILING INJUNCTION IN VIOLATION OF FRCP 65**

By way of illustration, not limitation, Mr. Garrett asserts that we had notice and opportunity re the 2012 July 09 pre-filing injunction but he also says that the black **Plaintiff <u>sued</u> Experian** *"again"* in *B. Benedict Waters v. Howard Sommers Towing, Inc., et al, 02:10-cv-05296 CAS (AJWx)*.  **<u>Experian AB</u> 29, ¶ 1**.  Apparently for its <u>initial inflammatory value</u>—*impressively unconcerned* of later being exposed a liar—Garrett, a Jewish lawyer, just made that up.  *Literally.* Experian <u>never was</u> sued in *02:10-cv-05296 CAS (AJWx)*.  The rest of his racist propaganda is equally unreliable.

On **2010 June 18**, Defendants moved for a pre-filing order.  **DN 73**.

On **2010 June 28**, Plaintiff filed opposition.  **DN 79**.

On **2010 July 20**, Defendants' motion was denied.  <u>Order</u>, **DN 104**.

On **2012 July 09**, *two years and eleven days later*, Snyder, j. issued *out of the blue* a permanent injunction.   Converse to Mr. Garrett, and <u>FRCP 65(a)(1)</u>, there was no advance notice, <u>Docket</u>, *passim*, **<u>Experian ER</u>, vol. 2, tab 10**, no opportunity to be heard.  Docket, *passim*.  <u>Ibid</u>.  Contrary to the <u>Brief</u> and <u>FRCP 65(d)</u>, see **DN 306, p.8, ¶ 1**, the reasons, *if any*, for the issuance of the 2012 July 09 pre-filing injunction are not stated.  See **<u>Supp ER</u>: T1 at4, ¶ 1**.  There are no findings supporting the pre-filing order.  See, *ante*, <u>Ch. II, Pt 7, § E. p. 16-17</u>.

**Part 8**.                **CONCLUSION: ANY LIE REPEATED OFTEN ENOUGH**

We gave written notice to Experian re the matter disputed; as ably described in the FAC. **DN 8 at 16, ¶ 69**. Experian acknowledged receipt and confirmed that we were disputing, *inter alia*, owing interest. See **Supp ER:T10**. Additionally, Plaintiff confirmed at his deposition that he was suing Experian over "***inaccurate information***". **Experian ER 156:10-16**.

In our motion for sanctions and more so in our brief, Appeal No. 13-55378, we examine the tactic employed heavily by Garrett and his Jewish colleagues which, oxymoronically, is one of Joseph Goebbels'. "*Propaganda has absolutely nothing to do with truth,*" said the Nazi Minister of Propaganda. "*Propaganda is organized, carefully designed lying.*" Goebbels added, "***Any lie, frequently repeated, will gradually gain acceptance***." [20] Hence, Nathaniel Peardon Garrett *frequently repeated* that Plaintiff "***actually litigated***" and is challenging the "***legal validity***" of tows by HT.

------

[20] Joseph Goebbels, Chapter 7, Part 2 - *Practitioners and Technicians of Totalitarian Rule* of The Face Of The Third Reich:  Portraits of the Nazi Leadership. by Joachim C. Fest (translated from the German by Michael Bullock) 1st Da Capo Press, ed. (1999).

In fact, Plaintiff was asked that very question:

> "So as I understand it, you are disputing
> the accuracy of the Rickenbacker accounts for
> several reasons; correct?
>
> A    Yes.
>
> Q    <u>One of those reasons is that you believe</u>
> <u>that Hollywood Tow illegally seized those</u>
> <u>vehicles; correct?</u>
>
> A    <u>No</u>."

<u>Experian ER</u> 153:3-14.

## Epilogue – Sometimes "*The Universe Bends Towards Justice*"

Plaintiff is <u>not</u> anti-Semitic; just frank and realistic; the task Herculean.

**Snyder is greatly abusing her authority.**  We do not yield, however.  Because,

sometimes, just when you think that the authorities have the final word, sometimes

just when you think that the rules of the powerful cannot possibly apply on skid

row, for a brief moment at least, to paraphrase the Rev. Martin Luther King, Jr.,

"*the universe bends towards justice.*"

DATED:    2013 June 13

By: *[signature]*

B. Benedict Waters

Plaintiff, *Pro se*

## Certificate re ███Compliance

Plaintiff-Appellant states that this Reply Brief does <u>complies</u> with the 2013

May 24 Order, DktEntry 65, setting a type-volume limitation of less than 8,400

words set forth, exclusive of Rule 32(a)(7)(B)(iii) items contains ███ *8,398* words.

This Reply Brief is submitted with a Supplemental Excerpts of Record.

Submitted —
2013 May 13

By: _____
B. Benedict Waters
**Plaintiff**, *Pro Se*

# No. 12-56464

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**B. Benedict Waters**,
    Plaintiff-Appellant,

    vs.

**Juan Carlos Casas**,
a natural person;

**Rita L. Robinson**,
a natural person;

**Rickenbacker Group, Incorporated**, a California corporation;

**Experian Information Solutions, Incorporated**, an Ohio corporation;

**Hollywood Tow Service, Incorporated**, a California corporation;

**City of Los Angeles**, a California municipal corporation;

    Defendants - Appellees.

Appeal from the United States District Court for the Central District of California, Western Division

**No. 02:09 - CV - 07696 CAS (AJWx)**

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUN 2 1 2013

FILED_____
DOCKETED_____
        DATE      INITIAL

## PROOF OF SERVE RE REPLY BRIEF AND SUPPLEMENTAL EXCERPTS OF RECORD

*B. Benedict Waters*

**Plaintiff - Appellant**, *pro se*
6230 Wilshire Blvd., #182 ● Los Angeles, California 90048 ● 310-967-3943

## Certificate of Service

I, Arlene Johnson, certify that I am a citizen of the United States and am employed in the State of California, am over the age of eighteen years, and am not a party to the above-entitled appeal.  My business address is 6230 Wilshire Blvd., # 182, Los Angeles, California, 90048-5104 and my telephone number is 310-967-3943.

On June 19, 2013,  I served copies of  **REPLY BRIEF** and **SUPPLE-MENTAL EXCERPTS OF RECORD** on the following by placing same in a sealed envelope, first-class mail postage prepaid and depositing same in the United States mail addressed accordingly as:

Angela M. Taylor
Jones Day
3161 Michelson Drive, Suite 800
Irvine, CA 92612-4408

Rickenbacker Group, Inc.
15005 Concord Circle
Morgan Hill, CA 95037

Liedle, Lounsbery, Larson & Lidl, LLP
12555 High Bluff Drive, Suite 200
San Diego, California 92130

Juan Carlos Casas
15005 Concord Circle
Morgan Hill, CA 95037

Gabriel Seth Dermer
Office of City Attorney
200 N. Main St., 9th Flr, City Hall East
Los Angeles, CA 90012-4131

I hereby certify under the penalty of perjury that the foregoing is true and correct. Executed June 19, 2013, at Los Angeles, California.

_____
Signature of Person Making Service